Opinion issued July 1, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00225-CR (Count I)

NO. 01-10-00378-CR (Count II)

———————————

Don O’Neal Barker, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 159th District Court

Angelina County, Texas



Trial Court Case No. CR-28170*

 



 

MEMORANDUM OPINION

          The
trial court convicted appellant Don O’Neal Barker on two counts of indecency
with a child by contact and sentenced him to twenty years’ confinement in
prison on each count.  See Tex.
Penal Code Ann. § 21.11 (Vernon Supp. 2009).  Count I alleged that Barker touched the breast
or anus of Linda Lock (appellate case number 01-09-00225-CR), and Count II
alleged that Barker touched the breast or anus of Amy Lock (appellate case
number 01-10-00378-CR).  On appeal,
Barker challenges the legal and factual sufficiency of the evidence to support
his convictions, arguing that Linda recanted her outcry before trial.

          We
affirm.

Background

          Sisters
Amy and Linda were aged 8 and 9, respectively, at the time of the incidents that
are the basis of this appeal.  Amy and
Linda had little contact with their mother, who was married to their father but
who had been living with another man for several years.  Amy and Linda lived with various relatives
intermittently, including their father, their maternal grandmother, whom they
called “Mimi,” their maternal great-aunt, and their maternal great-grandmother,
whom they called “Granny.”  Mimi was
married to Barker.  During various times
when the girls lived with Granny, their father lived with them as well.

          Around
Christmas 2007, the girls were living with Granny.  Their mother brought them and their two
younger half-sisters to visit Mimi and Barker at their home.  Amy and Linda testified that during this
visit Barker touched their breasts under their clothes.  Linda testified that Barker also touched her
vaginal area and buttocks beneath her clothes on the same occasion.  In addition, the trial court admitted into
evidence a note Linda wrote that described this incident (and another incident
of sexual abuse that allegedly occurred a few years earlier).

          Linda
testified that Mimi returned home shortly after Barker fondled her and she told
her what happened, saying, “Mimi, are you just going to stand here and let him
do this to me?”  Linda testified that her
grandmother said, “I don’t believe you.” 
Linda testified that she cried for days afterward and initially denied
anything had happened because she feared for her mother’s safety.  She eventually told her mother and Granny on
February 11, 2008.  They called the
girls’ great-aunt.

The great-aunt asked Amy if Barker
had ever done anything to her.  Amy
initially refused to talk about it but later wrote a note, which was admitted
at trial.  The note said that Barker
“reached his hand down my shirt.”  Amy’s
great-aunt testified that Amy then told her that around Christmas, while visiting
Mimi and Barker, Barker “put his hand down her shirt, her blouse, and touched
her on the breast.”  The great-aunt
testified that Amy “made a slit-throat gesture” and nodded yes when asked if
Barker threatened to kill her.

Granny and the girls’ great-aunt
reported the incident to the Angelina County Sheriff’s Department.  Their great-aunt called Child Protective
Services (CPS) the next day, and Linda then spoke privately to a CPS
investigator.  Both girls were
interviewed at Angelina Alliance for Children, and both girls entered counseling
with Marisa Phillips, who worked for Buckner Children and Family Services,
providing counseling for children referred by CPS.  The forensic interviewer who spoke to the
girls at the Angelina Alliance for Children testified at trial, and the video
recordings of their interviews were admitted and played during the
guilt-innocence phase of trial. 

Both girls were subpoenaed to
testify at a hearing regarding revocation of Barker’s parole for a crime
unrelated to this case.  Their father
testified that the parole hearing was stressful for the girls and that Linda
required anxiety medication in order to testify.

After the outcry, Linda became
depressed, began wetting her bed, crying easily, experiencing night terrors, and
exhibiting anger.  Linda eventually
entered counseling for depression with Dr. Tom Middlebrook.  After having contact with her mother, she
expressed suicidal ideations and she was hospitalized for seven days.  During the hospitalization, she recanted her
outcry, saying she realized she should tell the truth.  At trial, she testified consistently with her
outcry and she testified that her prior disavowal was a lie designed to stop
the questioning.  She said:

I told him [the
doctor/counselor] I lied because I wanted to leave.  I didn’t want to do this anymore.

          . . .

I didn’t want to go to no
more of these court things that you-all are having.

          . . . 

I don’t want to have to deal
with you-all no more.  I don’t like the
questions you-all ask.  You wouldn’t like
it if somebody asked you questions like you-all ask me.

 

I was lying when I said that
I was lying about all this stuff.  When I
said I was lying, I was lying.  I wasn’t
telling the truth.  The only thing that I
was thinking about when I said I was lying that if I said I was lying, I
wouldn’t have to deal with you-all asking me all these questions, making me
feel like you-all are paparazzi and I was a person that had to answer you-all
all the time.       



          Barker
testified and unequivocally denied the charges against him.  He said, “I’ve never touched those children.
. . .  I’ve never touched them
sexually.”  Barker accused the girls’
great-grandmother of coaching them to make false accusations against him because
she did not like him.

          Mary
Budke testified as a character witness for Barker.  In 2005 and 2006, Barker and Mimi lived in a
trailer on Budke’s property in Silsbee, Texas. 
She testified that she knew of Barker’s troubles with illegal drugs and
with the law and that she “never saw any indication of any inappropriate
behavior on his part towards any child.” 
She also testified that she had once reported him to the sheriff’s
department after he verbally threatened to kill her, but she said that she “never,
never intended for him to go back to jail.” 
She also made a statement in Barker’s support after the lawyers
concluded their questioning of her, saying “I cannot and do not believe that he
would ever hurt a child.  And I just want
to put that on the record.  I believe in
his innocence.”

          Mimi
also testified in support of Barker.  She
testified that the girls lived with her from 2005 until approximately February
or March 2007.  During that time, Barker
spent approximately nine months in prison. 
Mimi testified that she and the girls wrote to Barker when he was in
prison and the girls sometimes drew pictures for him.  The trial court admitted four such letters,
in which both girls expressed affection for Barker.  Three of the four letters were dated from
2006.  Mimi testified that the girls’
mother brought them to her home approximately a day or two after Christmas 2007.  She denied that Linda told her Barker touched
her inappropriately while at her house, and she denied telling Linda that she disbelieved
her.  Mimi testified that she first heard
about the allegations in February 2008. 
She also accused her mother of coaching the girls to make false
accusations because she did not like Barker. 
Furthermore, Mimi testified that she did not believe Barker committed
the alleged acts.  

          The
trial court found Barker guilty and asked the parties to discuss an agreed
disposition before he assessed punishment.  Barker indicated that he might have material
information that could be used to negotiate with the prosecutor, however the
information might be adverse to another of his defense attorney’s clients.  The trial court permitted Barker’s attorney
to withdraw and appointed a new attorney for the punishment phase of
trial.  After a brief hearing in which no
testimony was heard, the trial court sentenced Barker to twenty years’
imprisonment on each count, to run concurrently.  On appeal, Barker challenges the legal and
factual sufficiency of the evidence to support these convictions.

Standard of
Review

Legal Sufficiency

When evaluating the legal
sufficiency of the evidence, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005).  The standard is
the same for both direct and circumstantial evidence cases.  King v.
State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).  If we determine
that the evidence is legally insufficient, we must render a judgment of
acquittal.  Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Factual Sufficiency

In a factual sufficiency review, we
view all of the evidence in a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Under the first prong of Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have acquitted.  See Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the factfinder’s
resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the trial court’s judgment.  See id.
 In conducting a factual sufficiency
review, we must also discuss the evidence that, according to the appellant,
most undermines the judgment.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

In reviewing the factual
sufficiency of the evidence, appellate courts should afford almost complete
deference to a factfinder’s decision when that decision is based upon an
evaluation of credibility.  Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008).  In a bench
trial, the trial court judge is in the best position to judge the credibility
of a witness because he is present to hear the testimony, as opposed to an
appellate court relying on the cold record.  Id.; see Johnson v. State, 571 S.W.2d 170,
173 (Tex. Crim. App. 1978) (“The jury, or trial judge in a trial before the
court, is the sole judge of the credibility of the witnesses and may accept or
reject any part or all of the testimony given by State or defense witnesses.”).
 The factfinder may choose to believe
some testimony and disbelieve other testimony.  Lancon,
253 S.W.3d at 707.

Indecency
with a Child by Sexual Contact

A person commits indecency with a
child if he engages in sexual contact with a child younger than 17 years old
who is not that person’s spouse.  Tex. Penal Code Ann. § 21.11(a)(1),
(b-1) (Vernon Supp. 2009).  “Sexual
contact,” as defined within Penal Code section 21.11, means “any touching by a
person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child.”  Id. § 21.11(c)(1).  The uncorroborated testimony of a child victim
alone is sufficient to support a conviction for indecency with a child.  Tex. Code
Crim. Proc. Ann. art. 38.07 (Vernon 2005); Lee v. State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.]
2004), aff’d, 206 S.W.3d 620 (Tex. Crim.
App. 2006).

Analysis

Linda testified that Barker touched
her breasts and vaginal area under her clothes while visiting his house around
Christmas 2007.  In the recorded
interview, which was played during the guilt-innocence proceeding, she
described the inappropriate contact.  Linda’s
handwritten note describing Barker touching her breast around Christmas 2007
was admitted at trial.  Viewing the
evidence in the light most favorable to the verdict, we hold that the evidence
was legally sufficient to support Barker’s conviction of count I, i.e., that he
engaged in sexual contact with Linda, a child younger than 17 years old who was
not his wife.  See Drichas, 175 S.W.3d at 798; Lee,
176 S.W.3d at 458.

Amy testified that Barker touched
her and pointed to the breast area of a doll that was used as a demonstrative
aid to her testimony.  Her handwritten
note describing Barker’s inappropriate touching of her was admitted at trial,
as was the video recording of her interview at Angelina Alliance for Children,
in which she told the forensic investigator that Barker touched her
breast.  Viewing the evidence in the
light most favorable to the verdict, we hold that the evidence was legally
sufficient to support Barker’s conviction of count II, i.e., that he engaged in
sexual contact with Amy, a child younger than 17 years old who was not his
wife.  See Drichas, 175 S.W.3d at 798; Lee,
176 S.W.3d at 458.  We overrule Barker’s
legal sufficiency issue as to both counts.

As to factual sufficiency, Barker
argues that Linda recanted her outcry and thus the evidence was inconsistent
and “could support a theory of innocence as well as guilt.”  Barker denied touching either Linda or Amy
inappropriately, and Mimi and Budke testified that they did not believe the
allegations against Barker were truthful.  Mimi denied that Linda had made an outcry to
her.  Phillips, the counselor, testified
that Linda recanted her outcry while hospitalized, saying that she realized she
should have told the truth.  Phillips’s
treatment records, which were admitted at trial, also reflect that Linda
recanted her outcry and later became equivocal about whether Barker had done
anything inappropriate to her.  Both
Barker and Mimi testified that Granny did not like Barker and that they
believed she had coached them to make false accusations against Barker.  However, although Linda previously recanted
her outcry, at trial she explained her reasons for the disavowal and testified
consistently with her earlier outcry.

It is axiomatic that the trier of
fact is the sole judge of the credibility of the witnesses and must resolve
inconsistencies in the evidence.  See Johnson, 571 S.W.2d at 173; Saldana v. State, 287 S.W.3d 43, 60
(Tex. App.—Corpus Christi 2008, pet. ref’d) (“[I]t is well established that
outcry testimony is substantive evidence of guilt that is sufficient to support
a conviction beyond a reasonable doubt . . . .  Furthermore, when a witness recants prior
testimony, it is up to the fact finder to determine whether to believe the
original statement or the recantation.”); Maldonado
v. State, 887 S.W.2d 508, 509 (Tex. App.—San Antonio 1994, no writ) (“Just
because the complaining witness recants incriminating testimony does not mean
the evidence is insufficient.”).  Here,
the evidence contrary to guilt relies on a determination of credibility, and we
afford almost complete deference to the trial court’s evaluation.  See Lancon, 253 S.W.3d at 705.  Having considered all of the evidence in a
neutral light, we conclude that the evidence of Barker’s guilt is not so weak
that the verdict is clearly wrong or manifestly unjust, nor is it contrary to
the great weight and preponderance of the evidence.  See
Johnson, 571 S.W.2d at 173.  We hold
that the evidence is factually sufficient to support Barker’s convictions on
both counts I and II, and we overrule Barker’s factual sufficiency issues on
both counts.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                          Michael
Massengale

                                                          Justice


 

Panel consists of Justices Jennings, Alcala, and
Massengale.

Do not publish. 
Tex. R. App. P. 47.2(b).











*        Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Gov’t Code Ann. § 73.001 (Vernon
2005). We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See Tex. R. App. P. 41.3.  The
complainants’ names in this opinion are pseudonyms used in the indictments and
in the trial court.